UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLEMENT WILLIAM NAYLOR, | ) | CIVIL ACTION NO. 4:20-CV-1507 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Clement William Naylor, an adult individual who resides within the

Middle District of Pennsylvania, seeks judicial review of the final decision of the

Acting Commissioner of Social Security ("Commissioner") denying his

application for disability insurance benefits under Title II of the Social Security

Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

parties' briefs, the Commissioner's final decision, and the relevant portions of the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On August 18, 2017, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 17; Doc. 15-2, p. 18). In this application, Plaintiff alleged he became disabled on September 24, 2017, when he was fifty years old, due to the following conditions: anterior and posterior lumbar fusion L3L4; high cholesterol; heart attack on 10/30/16; neck pain C4 through C6; depression; and a suicide attempt on 3/15/10. (Admin. Tr. 196; Doc. 15-6, p. 6). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit kneel, climb stairs, complete tasks, concentrate, use his hands, and get along with others. (Admin. Tr. 211; Doc. 15-6, p. 21). Plaintiff has at least a high school education. (Admin. Tr. 27; Doc. 15-2, p. 28). Before the onset of his impairments, Plaintiff worked as a corrections officer and heavy equipment operator. (*Id.*).

On November 30, 2017, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 83; Doc. 15-4, p. 2). On January 23, 2018, Plaintiff requested an administrative hearing. (Admin. Tr. 88; Doc. 15-4, p. 7).

On February 25, 2019, Plaintiff, assisted by his counsel, appeared and testified during a video hearing before Administrative Law Judge Elizabeth W. Koennecke (the "ALJ"). (Admin. Tr. 17; Doc. 15-2, p. 18). On May 29, 2019, a supplemental video hearing was held. (*Id.*). On June 6, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 14-16; Doc. 15-2, pp. 15-17). On August 9, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 164-65; Doc. 15-4, pp. 83-84).

On June 22, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-3; Doc. 15-2, pp. 2-4).

On August 23, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶ 8). As relief, Plaintiff requests that the Court award benefits, or in the alternative, remand this case to the Commissioner to conduct a new administrative hearing. (*Id.*).

On March 8, 2021, the Commissioner filed an Answer. (Doc. 14). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 14, ¶ 8). Along with her

Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief (Doc. 18), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 20) have been filed.  This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security appeals.

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d

1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged

---

[2] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on June 6, 2019.

in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

With these legal standards in mind, I now turn to the merits of this case.

IV.    DISCUSSION

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her June 6, 2019 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between September 24, 2017 (Plaintiff's alleged onset

date) and June 6, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 20-21; Doc. 15-2, pp. 21-22).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obesity; degenerative disease of the lumbar spine with a history of fusion surgery; and a mental impairment (variously characterized). (*Id.*). The ALJ also identified the following medically determinable non-severe impairments: cardiovascular issues (including a prior myocardial infarction); neck pain; and gout. (*Id.*).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> the claimant is limited to lifting and carrying 20 pounds occasionally and ten pounds frequently, sitting four hours, standing two hours, and walking two hours, reaching frequently, using foot controls occasionally, and no more than occasional kneeling, bending, stooping, crawling, crouching, and climbing. The claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with all others

to the extent necessary to carry out simple tasks, handle simple, repetitive work-related stress in that the person can make occasional decisions directly related to the performance of simple tasks involving goal-oriented work rather than work involving a production-rate pace.

(Admin. Tr. 22-23; Doc. 15-2, pp. 23-24).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 27; Doc. 15-2, p. 28). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 27-28; Doc. 15-2, pp. 28-29). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: parking lot cashier (DOT Code 211.462-010), gate attendant at entry (DOT Code 344.667-010), information clerk (DOT Code 237.367-018). (*Id.*).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because:

1. The ALJ erred in determining that gout was non-severe at Step 2 and this mistake permeated the subsequent steps.
2. The physical RFC is not supported by substantial evidence because the ALJ failed to properly consider the physical opinion evidence, particularly that of Shashank Bhatt, M.D.
3. The mental RFC is not supported by substantial evidence because the ALJ improperly considered the mental opinion evidence.

(Doc. 18, p. 3).

I will discuss each in turn.

B.    WHETHER THE ALJ ERRED AT STEP TWO AND WHETHER THIS IS A
      HARMLESS ERROR

Plaintiff argues that the ALJ erred when he found that Plaintiff's gout was a non-severe impairment because Plaintiff did not meet the twelve-month durational requirement. (Doc. 18, pp. 3-5). Plaintiff contends that this error was not harmless because the ALJ only briefly touched on Plaintiff's gout when crafting the RFC. (*Id.*). The Commissioner counters by arguing any error at step two would be harmless because the ALJ continued in the sequential evaluation process. (Doc. 19, pp. 15-17). However, on review of the ALJ's analysis, I find that she conflated the two distinct principles of severity and duration at step two. Despite this error, I find it harmless.

The ALJ found that Plaintiff's gout was non-severe at step two because, "[a]lthough the claimant had some significant episodes of gout, the evidence does not reflect consistent limitation for a period of at least twelve months." (Admin. Tr. 20-21; Doc. 15-2, pp. 21-22). The ALJ continues her reasoning:

> Rather, the claimant had two flares occurring two months apart in 2017, the latter of which was only "[p]ossibly related to gout." More flares were documented six weeks apart about seven months later. X-rays of the right foot showed mild degenerative joint disease with small erosions, and mild soft tissue swelling which the interpreting radiologist noted suggests possible gout. The condition was treated with Toradol and prednisone. However, because the condition results

> in only rare flare-ups and does not impose chronic limitations on a consistent basis, gout does not meet the twelve-month durational requirement and is not a severe impairment.

(*Id.*) (internal citations omitted).

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii); SSR 85-28, 1985 WL 56856.

Under the Commissioner's regulations, an impairment is "non-severe" if it "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921. Conversely, an impairment is "severe" if it *does* significantly limit a claimant's physical or mental ability to do basic work activities. The phrase, "significantly limits," however is not synonymous with "disability." Rather, the ALJ's analysis at step two is a threshold test designed to screen out *de minimis* claims.

In this case, the ALJ appears to conflate the two analytically distinct concepts of severity and duration. Unlike the severity analysis, the question of impairment duration requires the ALJ to evaluate whether the impairment has lasted, or is expected to last, for a continuous period of at least twelve (12) months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Other courts have found legal error when a decision inappropriately conflates the analysis of severity and

duration. *See Snedeker v. Colvin*, No. 13-cv-970, 2015 WL 1126598, at *4 (N.D.N.Y. Mar. 12, 2015); *Gray v. Astrue,* No. 04-cv-3736, 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009); *Stadler v. Barnhart,* 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) ("To state that an impairment is not severe because it does not meet the twelve-month requirement, then, is inconsistent with the Commissioner's own interpretation of the regulations."). While the ALJ cites to records to support the non-severity of Plaintiff's gout, she ultimately concludes that Plaintiff's gout is non-severe is because it does not meet the duration requirements. Because ALJ improperly conflated the issues of impairment duration with impairment severity at step two, I find that the ALJ's step two finding on Plaintiff's gout was a legal error.

Having found that the ALJ committed a legal error at step two, I must next consider whether this error is harmless. Plaintiff argues that a step two error is harmful because the ALJ could have limited Plaintiff to sedentary work, which might preclude employment. (Doc. 18, p. 5). Additionally, Plaintiff argues that in his testimony, he reported to the ALJ that he had to keep his foot elevated, which might keep him off task more than 15% of the time. (*Id.*). However, I do not find this argument persuasive.

First, without anything more, Plaintiff's argument that the ALJ would have limited him to sedentary work because of his gout is speculative and it does not meet his "burden of explaining how a more detailed discussion of his [impairment]

inevitably would have led the ALJ to craft a more restrictive RFC finding." *Receveur v. Saul*, No. 18-cv-07927, 2019 U.S. Dist. LEXIS 175496, at *32 (D.N.J. Oct. 8, 2019) (citing *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766-67 (3d Cir. 2016)); *Gullace v. Colvin*, No. 15-cv-7630, 2017 WL 714356, at * 32-33 (D.N.J. Feb. 23, 2017) ("[b]ecause Plaintiff has merely offered a generalized response . . . he has failed to meet his burden, as such, this Court finds the ALJ's error to be harmless").

As to Plaintiff's second argument, while Plaintiff testified that he must elevate his foot when suffering from gout, (Admin. Tr. 43; Doc. 15-2, p. 44), the ALJ discounted that testimony because his statements regarding the intensity, persistence, and limiting effects of his gout were not entirely supported. (Admin. Tr. 23-24; Doc. 15-2, pp. 24-25). Plaintiff does not challenge the ALJ's credibility determination. Additionally, there is no medical opinion on the record that discusses Plaintiff's gout, or attributes limitations because of it. By citing this one piece of testimonial evidence, I find that Plaintiff has not met his burden of showing harmless error on this issue.

C.   WHETHER THE ALJ ERRED IN FORMULATING THE PHYSICAL RFC

Plaintiff argues that the ALJ improperly rejected the medical opinion of Shashank Bhatt, M.D. The Commissioner disagrees, arguing that the ALJ properly found that Dr. Bhatt's opinion was not supported or consistent with the record.

(Doc. 19, p. 23-24). On this matter, I agree with the Commissioner. Before discussing why, I will discuss Dr. Bhatt's opinion in greater detail, the ALJ's treatment of the opinion, and the standards for assessing medical opinion evidence.

1.      Dr. Bhatt's Opinion and The ALJ's Treatment of It

Dr. Bhatt, Plaintiff's primary care physician since June 27, 2018, opined that Plaintiff could only stand, walk, or sit for one or two hours in an 8-hour day, lift up to 10 pounds frequently, and would be off-task for more than 15% of the workday. (Admin. Tr. 383-85; Doc. 15-7, pp. 113-15). Dr. Bhatt attributed these limitations to Plaintiff's cervical radiculopathy, and to support his opinion, Dr. Bhatt cited the findings of an MRI. (*Id.*).

The ALJ found this opinion not persuasive because it lacked support, and it was not consistent with the record. (Admin. Tr. 25; Doc. 15-2, p. 26). The ALJ explained:

> The evidence contains little support for these statements, notably because the doctor attributed the limitations to a diagnosis of cervical radiculopathy. There is no support for the finding the claimant's cervical spine impairment results in any deficits in sitting, standing, or walking, or results in time off-task or absences from work. Moreover, as noted above, MRI of the cervical spine showed only mild to moderate degenerative changes. As described by a physician who reviewed this study, the imaging does not explain the claimant's reported symptoms of pain, numbness, and tingling in the right arm. The opinion is also not consistent with the other evidence, such as the consultative examiner's findings of intact hand and finger dexterity, full grip strength, no sensory deficit, and full overall strength in the upper and lower extremities.

(Admin. Tr. 25; Doc. 15-2, p. 26).

    2.      Standards for Assessing Medical Opinion Evidence

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities:"

(i)     [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)    [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)   [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)   [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2); 20 C.F.R. § 416.913(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a States as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law. 20 C.F.R.

Page 16 of 29

§ 404.1502(d); 20 C.F.R. § 416.902(d). If one medical source submits multiple medical opinions, and ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis. 20 C.F.R. § 404.1520c(b)(1); 20 C.F.R. § 416.920(b)(1).

Because Plaintiff's application was filed after March 27, 2017, a new regulatory framework applies. 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may,

but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 404.1520c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

Now that I have discussed Dr. Bhatt's opinion, the ALJ's treatment of it, and the standards the ALJ must use in assessing the opinion, I will now discuss the merits of the argument.

> 3.    Did the ALJ Properly Find That The Opinion Was Not Supported?

Plaintiff argues that the ALJ erred when she held Dr. Bhatt's opinion lacked support because he opined that Plaintiff's limitations come from his cervical radiculopathy. Specifically, the ALJ found that:

> [t]here is no support for the finding the claimant's cervical spine impairment results in any deficits in sitting, standing, or walking, or results in time off-task or absences from work. Moreover, as noted above, MRI of the cervical spine showed only mild to moderate degenerative changes.

> (Admin. Tr. 25; Doc. 15-2, p. 26).

In Plaintiff's Brief, he argues that his cervical spine impairment does cause deficits and cites to (1) Plaintiff's testimony and (2) Plaintiff's subjective reports to different providers. (Doc. 18, p. 7). However, the burden is on Plaintiff to prove and to cite evidence in showing that the ALJ erred in his supportability analysis. *Prearyer v. Comm'r of Soc. Sec.*, No. 19-cv-21385, 2020 WL 7778077, at \*5 (D.N.J. Dec. 31, 2020) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Here, instead of citing to objective medical evidence, Plaintiff cites in his brief his testimony and his subjective reports to physicians. Neither is sufficient for the Court to reject the ALJ's supportability analysis, as neither constitutes objective medical evidence. 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. 404.1529(c)(1) (objective medical evidence is "obtained from the application of medically acceptable clinical and laboratory diagnostic techniques").

Next, Plaintiff attacks the ALJ's conclusion that Dr. Bhatt's medical opinion is not supported because he cites to an MRI that demonstrate normal findings. However, I see no issue in this part of the analysis.

Dr. Bhatt supports his opinion by citing to Plaintiff's cervical spine MRI. However, the ALJ reviewed the records, and held that the MRI of the cervical spine, showed "only mild to moderate degenerative changes . . . as described by a physician [Dr. Rickert, a neurosurgeon] who reviewed this study, the imaging does not explain the claimant's reported symptoms . . . in the right arm." (Admin. Tr.

25; Doc. 15-2, p. 26). Plaintiff argues that Dr. Rickert's interpretation of this MRI does not align with the radiologist's interpretive report. (Doc. 18, pp. 7-8). As such, Plaintiff argues this is another wrong reason to discredit Dr. Bhatt's opinion. However, what Plaintiff is asking the Court to do is credit the radiologist's report of Plaintiff's MRI instead of Dr. Rickert's.[3] I decline to do so. A federal court will not reweigh the evidence on the record. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Dunlap v. Comm'r of Soc. Sec.*, No. 17-cv-64, 2018 WL 1172999, at *6 (E.D. Tenn. Mar. 6, 2018) ("that two physicians had different interpretations of the same MRI is no reason to disregard the ALJ's conclusions, such contradictory evidence is commonplace in social security appeals") (cleaned up).

4.    Did the ALJ Properly Find That The Opinion Was Not Consistent?

Finally, Plaintiff argues that the ALJ erred in analyzing Dr. Bhatt's opinion when he concluded that Dr. Bhatt's opinion is not consistent with the other evidence because it conflicts with:

> the consultative examiner's findings of intact hand and finger dexterity, full grip strength, no sensory deficit, and full overall strength in the upper and lower extremities.

---

[3] Based on a review of the record, it appears Plaintiff only had one MRI done of the cervical spine. (Admin. Tr. 671; Doc. 15-10, p. 72). That MRI was taken on August 21, 2017. (*Id.*).

(Admin. Tr. 25; Doc. 15-2, p. 26). Plaintiff argues that by focusing on the consultative examiner's relatively normal findings, as opposed to other medical evidence, the ALJ cherry picked data to support his conclusion.

First, to any extent Plaintiff is asking the Court to reweigh the evidence de novo, it will not. A federal court is limited to deciding whether substantial evidence supports the ALJ's findings. *Torres v. Barnhart*, 139 F. App'x 411, 413 (3d Cir. 2005).

Keeping that standard in mind, substantial evidence supports the ALJ's decision to find that Dr. Bhatt's opinion was not consistent with the record. Other medical evidence supports the ALJ's findings, for example:

- On a September 8, 2017 visit with Dr. Kim Rickert, Plaintiff had full strength (5/5) in all aspects of his motor exam but showed "breakaway weakness in the right arm." (Admin. Tr. 340-42; Doc. 15-7, pp. 70-72).

- On a November 9, 2017 visit with consultative examiner Gilbert Jenouri, Plaintiff had "hand and finger dexterity intact," and "grip strength 5/5 bilaterally." (Admin. Tr. 365-68; Doc. 15-7, pp. 95-98). Dr. Jenouri also noted that Plaintiff had 5/5 strength in the upper and lower extremities. (*Id.*).

- On a February 5, 2018 visit with Dr. Ashwini Sharan, Plaintiff showed 5/5 strength throughout. (Admin Tr. 596; Doc. 15-9, p. 64).

- On a March 20, 2018 physical therapy visit, a provider observed mild decrease in muscle mass in right upper trapezius. (Admin. Tr. 544-47; Doc. 15-9, pp. 12- 15). Plaintiff had a 70-pound grip strength in the right hand and 140 pound grip strength in the left hand. (*Id.*).

- On a March 21, 2018 physical therapy visit, a provider noted that Plaintiff had muscle tightness and a spasm present in "upper traps and cervical." (Admin. Tr. 550; Doc. 15-9, p. 18). Following the visit, Plaintiff had "[i]ncreased cervical ROM and decreased muscle tightness with STM." (*Id.*).

- On a March 23, 2018 physical therapy visit, Plaintiff had "soreness and tenderness around R upper trapezius, levator, and subccipitals, [but] [n]o spasming and improved tenderness noted following [therapy]." (Admin. Tr. 552; Doc. 15-9, p. 20).

- On a July 13, 2018 visit with Gloria Pedrick, CRNP, Plaintiff exhibited "decreased" muscle strength/tone, but no atrophy, cogwheeling, flaccidity, or spasticity. (Admin. Tr. 485; Doc. 15-8, pp. 101-02).

- On a July 20, 2018 visit with Dr. Shivang Desai, Plaintiff had a grip strength of 4/5 on the right hand and 5/5 on the left. (Admin. Tr. 627; Doc. 15-10, p. 28). He had full strength in his deltoid, bicep, triceps, and finger abduction. (*Id.*). At this visit Plaintiff received an epidural steroid injection. (*Id.*). On

Page 22 of 29

telephonic follow up, Plaintiff reported his pain to improved following the injection. (Admin. Tr. 663-64; Doc. 15-10, pp. 64-65).

- On an August 29, 2018 visit with Gloria Pedrick, CRNP, Plaintiff had normal muscle strength/stone, and no atrophy, cogwheeling, flaccidity, or spasticity. (Admin. Tr. 491; Doc. 15-8, pp. 107).

- On a September 12, 2018 visit, Plaintiff had no neck limitation of motion, spasm, tenderness, or trigger point. (Admin. Tr. 496; Doc. 15-8, p. 112)

- On a December 13, 2018 visit, Plaintiff's review of symptoms revealed no musculoskeletal abnormalities. (Admin. Tr. 504-05; Doc. 15-8, pp. 120-21).

- On a January 29, 2019 visit, Plaintiff's deceased muscle tone and strength, deceased range of motion, and laxity stability. (Admin. Tr. 511; Doc. 15-8, p. 127).

As the medical records show, Plaintiff's medical providers noted multiple times that Plaintiff had normal strength in his arms and hands. I acknowledge Plaintiff's concern that other medical evidence shows that Plaintiff had abnormal strength in his arms. However, even if there "is contrary evidence that would justify the opposition conclusion, as long as the substantial evidence standard is satisfied," this Court will uphold the Commissioner's decision. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (internal citations omitted). *See*

*also, Kent v. Schweiker*,   (3d Cir. 1983) (explaining that evidence is not substantial "if it is overwhelmed by other evidence.").

In sum, the ALJ properly analyzed both the supportability and consistency of Dr. Bhatt's opinion. As such, the ALJ's consideration of Dr. Bhatt's opinion is supported by substantial evidence.

### D.    DID THE ALJ ERR IN HIS CONSIDERATION OF SARAH KEMICK, CRNP'S OPINION?

Plaintiff argues all aspects of the ALJ's analysis of Ms. Kemick's opinion is flawed. (Doc. 18, pp. 11-15). The Commissioner disagrees and argues that the ALJ properly applied the regulations and correctly found that Ms. Kemick's opinion to be unsupported and inconsistent with the record. (Doc. 19, pp. 25-27). I disagree, and before I discuss my analysis, I will discuss Ms. Kemick's opinion and the ALJ's consideration of the opinion.

Ms. Kemick was Plaintiff's treating mental health provider from December 2018 to January 2019. (*See* Admin. Tr. 386-400; Doc. 15-8, pp. 2-16). Ms. Kemick thought Plaintiff had severe limitations based on his mental health conditions. Ms. Kemick opined that Plaintiff would be "off task" for more than 15% of the time; that he would be absent more than three times per month; and that he would have "poor" ability to deal with the public, to deal with stress, to maintain his attention, and to relate predictably in social situations. (Admin. Tr. 684-86; Doc. 15-10, pp.

85-87). Ms. Kemick further thought that Plaintiff would have "fair" ability to relate to coworkers, interact with supervisors, behave in an emotionally stable manner, and to demonstrate reliability. (*Id.*).

The ALJ found Ms. Kemick's opinion as unpersuasive. He held:

[i]n terms of supportability, this source reported that the claimant has difficulty composing his affect, and has a variable mood resulting in unpredictable exacerbations of episodes of depression, anxiety, and irritability, but the evidence contains only a single instance of labile affect, and no emergency or inpatient treatment for acute symptoms. It was also reported that the claimant is isolated, yet the claimant indicated in his written reports that he lives with his son, talks to other people daily, and occasionally engages in social activities such as going to a friend's campsite. This opinion therefore has little support. It is otherwise not consistent with the other evidence, including the opinions and prior administrative findings of the consultative psychologist and psychiatric consultants.

(Admin. Tr. 26; Doc. 15-2, p. 27).

Plaintiff first attacks the supportability prong of the ALJ's analysis, arguing that the ALJ is (1) conducting a lay reinterpretation of the record when he cited to "the single instance of labile affect," and (2) incorrectly summarized the record when he found that Plaintiff was not socially isolated. (Doc. 18, pp. 13-15). Both arguments fail; substantial evidence supports the ALJ's supportability analysis.

An ALJ is not conducting a lay interpretation of the record when he cites to objective medical evidence and finds that it conflicts with a medical opinion. In fact, the regulations require the ALJ to compare a medical opinion with "the

objective medical evidence and supporting explanations presented by a medical source . . ." 20 C.F.R. § 404.1520c(c)(1). And findings from a mental status exam is objective medical evidence. *Miller v. Comm'r of Soc. Sec.*, No. 20-cv-1088, 2022 WL 178590, at * 19-20 (M.D. Pa. Jan. 18, 2022) (upholding ALJ's rejection of medical opinion evidence when mental state exams showed largely normal findings). Additionally, based on the Court's review of the record, the ALJ correctly pointed out that in the four visits Plaintiff had with Ms. Kemick, she documented only one instance of labile affect. (Admin. Tr. 394; Doc. 15-8, p. 10). On one other instance, Ms. Kemick noted that Plaintiff displayed anxiety and depression, and had a constricted affect. (Admin. Tr. 388, Doc. 15-8, p. 4). Aside from those two instances, Plaintiff's mental status exams were generally normal. (Admin. Tr. 396-97, Doc. 15-8, p. 12-13); (Admin. Tr. 399-400; Doc. 15-8, pp. 15-16). So, on this point, I find no error.

Plaintiff also argues that the ALJ mischaracterized Plaintiff's social interactions to his detriment, and thus, gave a wrong reason for discounting Ms. Kemick's opinion. While I acknowledge there might be some inconsistencies or vagueness in the record about the scope of Plaintiff's social life, this is not enough for the Court to second guess the ALJ's weighing of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (a federal court "must not substitute our judgment for that of the fact finder."). And in weighing the evidence, the ALJ

decided to credit Plaintiff's own function report, where Plaintiff states that he talks to people daily and that he visits friends. (Admin. Tr. 210-11; Doc. 15-6, pp. 20-21). So, I will decline to disturb the ALJ's analysis on this point.

Plaintiff then attacks the ALJ's consistency analysis. He argues that Ms. Kemick's opinion is not consistent with the opinions of the consultative examiner and state agency consultant because she is the only person who actually treated Plaintiff on a longitudinal basis. (Doc. 18, pp. 12-13). To any extent Plaintiff is attacking the RFC simply because the ALJ found the opinions of non-treating providers more persuasive, it fails. "State agent opinions merit significant consideration," *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011), given that they "are experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1).  And tellingly, Plaintiff does not attack the ALJ's analysis on her treatment of Dr. Amanda Slowik's and Dr. Anthony Galdieri's opinions, the consultative examiner, and state agency consultant respectively. As such, there is no reversible error on this point.

Finally, Plaintiff argues that the ALJ failed to resolve a conflict between the three mental health opinions on the record because the consultative examiner opined Plaintiff could do simple work, the reconsideration consultant opined that Plaintiff could do unskilled work, and the initial level consultant opined Plaintiff could do 1-2 step functions. Plaintiff argues that all these work levels are not

similar and the ALJ should have resolved the differences between these three opinions. (Doc. 18, pp. 12-13). However, I do not identify any conflict here, as all three of these opinions seem consistent with one another. Consultative Examiner Dr. Amanda Slowik opined that Plaintiff had (1) no impairment in understanding and remembering simple instructions, (2) mild impairments in carrying out simple instructions, and in making judgments on simple work-related decisions, and (3) moderate impairments in understanding and remembering complex instructions, carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (Admin. Tr. 591; Doc. 15-9, p. 59). In the opinion, Dr. Slowik does not summarize that Plaintiff can only perform simple work.

At the initial level of review, state agency consultant Dr. Anthony Galdieri opined that Plaintiff had a moderate impairment in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods. (Admin. Tr. 77-78; Doc. 15-3, pp. 14-15). In the narrative portion of the opinion, Dr. Gladieri opined that "[i]mpairment would not preclude basic 1-2 step functions on a consistent basis." (*Id.*). And at reconsideration, Dr. Sandip Sen opined that "[t]he prior PRT/MRFC for unskilled work is appropriate." (Admin. Tr. 382; Doc. 15-7, p. 112).

To the Court, these opinions seem remarkably consistent, despite what Plaintiff argues. First, Dr. Slowik never said Plaintiff is limited to simple work,

rather, that's Plaintiff's own summary of Dr. Slowik's opinion. Second, even if she did say that, simple work is similar to unskilled work. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 212 (3d Cir. 2019) (citing *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016)). Finally, I fail to see how the ability to do 1-2 step functions is any meaningfully different than the ability to simple/unskilled work. Nor does Plaintiff describe how it is different, and how it would affect the RFC. As such, there is no reversible error on this matter.

## V.     CONCLUSION

It will be ordered that Plaintiff's request for benefits or for the Commissioner's decision to be vacated be Denied as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment should be issued in favor of Kilolo Kijakazi.

(3) The Clerk of Court is directed close this case.

Date: March 28, 2022                                  BY THE COURT

                                                              *s/William I. Arbuckle*
                                                              William I. Arbuckle
                                                              U.S. Magistrate Judge